UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY HARRISON,

        Petitioner,

                                                        CASE NO. 04-CV-71628-DT
v.                                         HONORABLE JOHN CORBETT O'MEARA

KENNETH ROMANOWSKI,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.    Introduction**

Petitioner Larry Harrison, a state prisoner presently confined at the Southern Michigan Correctional Facility in Jackson, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of two counts of first-degree murder, two counts of armed robbery, and possession of a firearm during the commission of a felony following a jury trial in the Wayne County Circuit Court in 2001. He was sentenced to life imprisonment without the possibility of parole on the murder convictions, concurrent terms of 25 to 50 years on the assault convictions, and a consecutive term of two years imprisonment on the firearm conviction.

In his pleadings, Petitioner raises claims concerning his lack of eyeglasses at trial and the effectiveness of trial counsel. For the reasons stated below, the Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on

appeal *in forma pauperis*.

## II.     Facts and Procedural History

Petitioner's convictions arise from the shooting deaths of Manfred Moser and Phyllis Gossett during an armed robbery at MRM Products in Detroit, Michigan on July 24, 2000. The Michigan Court of Appeals summarized the incident as follows:

> Defendant was once a contract employee of MRM, which Moser owned and for which Gossett was employed as secretary. The evidence at trial indicated that defendant accompanied codefendants Dajuan Jackson and Martin Armstead to MRM to steal pre-signed checks. Jackson remained outside the office as a lookout while defendant and Armstead entered the premises. Defendant shot and killed Moser and Gossett and stole a binder containing pre-signed checks.

*People v. Harrison*, No. 237488, 2003 WL 21715882, *1 (Mich. Ct. App. July 24, 2003) (unpublished).

At the final conference before trial, Petitioner expressed concerns about his relationship with defense counsel. Petitioner essentially complained of a breakdown in communications and sought new counsel. Defense counsel responded that he and Petitioner had disagreed on their evaluation of the issues, but he said that he would do his best on the case.

During jury voir dire, defense counsel informed the trial court that Petitioner's eyeglasses had been lost or broken during his incarceration and that he had been unable to get replacements while in jail. Defense counsel stated that Petitioner was unable to clearly see the jury box, which was 10 feet away, and argued that it was unfair to pick the jury when Petitioner could not see them. The trial court proceeded with jury selection, but ordered the jail to have Petitioner's eyes examined so that his father could provide him with eyeglasses.

At trial, MRM employees recounted finding the bodies of Manfred Moser and Phyllis Gossett sometime after 9:30 a.m. on July 24, 2000. Another MRM employee confirmed that

Petitioner had done a sign-painting job for MRM and a nearby business a few years earlier and that blank checks were kept in the office safe.

The medical examiner testified that Manfred Moser died from four gunshot wounds to the head and neck, two of which were fired at close range, and that Phyllis Gossett died from a gunshot wound to the back of her head.

Aiesha Jackson testified that she had known Petitioner for about six weeks prior to the incident. Petitioner came to see her at her aunt's house early in the morning on July 24, 2000 and they rode around in his truck. Petitioner told her that he used to work for a company that he intended to rob. He said that the owners were old and white, that he was going to tie them up, and that he would kill them if they saw him. Petitioner told her that he intended to steal blank, pre-signed checks. Aiesha refused to help Petitioner. He then asked her to see if her cousin Dajuan Jackson would participate. Aiesha returned to her house and her cousin came outside, spoke with Petitioner, and then left with Petitioner in his truck. Aiesha further testified that Petitioner, her cousin, and Martin Armstead returned to her aunt's house around 10:30 a.m. At that time, she saw a binder full of checks, some jewelry, a cell phone, Phyllis Gossett's identification card, and a woman's purse in Petitioner's truck, as well as a handgun. When she later heard about the robbery on the news and spoke to Petitioner about it, he threatened to kill her if she told anyone he was involved in the crime. Aiesha denied helping Petitioner cash stolen checks, but admitted initially lying to the police about her cousin's involvement in order to protect him.

Lorenzo Reese, Petitioner's cousin, testified that he saw Petitioner remove checks from a big checkbook and tell Dajuan Jackson to burn the rest on the day of the robbery.

Approximately one week later, Petitioner admitted to Reese that he had shot to people at MRM Products. Petitioner told Reese that Martin Armstead went inside the business with him and that Dajuan Jackson has stayed outside. Reese admitted that he made 10 to 12 calls from Phyllis Gossett's stolen cell phone after the incident.

Petitioner testified in his own defense at trial. He stated that he went to MRM Products with Dajuan Jackson and Martin Armstead to solicit a sign-painting job. While he was waiting in the vestibule, he heard gunshots and then heard someone fleeing out the back door. When he saw that Phyllis Gossett was seriously wounded, he panicked. He grabbed her purse, some checks from the counter, and a typewriter and then fled the scene. Petitioner admitted stealing the items but denied shooting the victims.

At the close of trial, the jury convicted Petitioner of two counts of first-degree premeditated murder, two counts of felony murder, two counts of armed robbery, and possession of a firearm during the commission of a felony. The trial court subsequently sentenced Petitioner to life imprisonment without the possibility of parole on two counts of first-degree murder, concurrent terms of 25 to 50 years on the armed robbery convictions, and a consecutive term of two years imprisonment on the firearm conviction.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the same claims contained in the current petition, as well as a motion to remand. The Michigan Court of Appeals initially denied the motion to remand, but remanded the case for further findings on the eyesight issue following oral argument. *People v. Harrison*, No. 237488 (Mich. Ct. App. March 12, 2003).

At the April 3, 2003 remand hearing, Petitioner testified that he had worn eyeglasses

since he was seven years old and that his nearsightedness had progressively worsened over time. Petitioner testified that he could see the jurors and witnesses at trial, but they were blurry and he could not make out their facial expressions. He stated that he could see defense counsel clearly at a distance of four feet. The parties stipulated that Petitioner's uncorrected vision was 20/400 at a November 1, 2001 eye examination, approximately five months after trial.

After the remand, the Michigan Court of Appeals issued a per curiam opinion affirming Petitioner's convictions. *People v. Harrison*, No. 237488, 2003 WL 21715882 (Mich. Ct. App. July 24, 2003) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Harrison*, 469 Mich. 974, 671 N.W.2d 884 (2003).

Petitioner thereafter filed the present habeas petition asserting the following claims:

I. Because Petitioner requested before trial began to have his lost eyeglasses replaced and because he could not see adequately, by holding trial without him having glasses, the trial judge denied him due process and a fair trial and violated his constitutional and statutory rights to reasonable assistance, be present, confront witnesses, and assist defense counsel.

II. Petitioner should be given a new trial because there was a breakdown in the relationship between him and defense counsel, because the trial judge did not appoint new counsel, and because defense counsel was ineffective in representing him.

Respondent has filed an answer to the petition contending that the claims should be denied based upon procedural default and/or for lack of merit.

### III. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV. Analysis**

    A.    <u>Eyeglasses Claim</u>

Petitioner first asserts that he is entitled to habeas relief because he was not provided with his eyeglasses at trial and could not adequately see the witnesses. Petitioner claims that the failure to provide him with eyeglasses violated his constitutional right to be present, to assist in his own defense, and to confront the witnesses against him. Respondent contends that this claim is barred by procedural default and otherwise lacks merit.

      1.      Procedural Default

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. In *Wainwright v. Sykes*, 433 U.S. 72, 85 (1977), the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief, the court relied upon a state procedural bar – Petitioner's failure to object or seek a continuance at the close of jury selection and prior to the start of trial. *See Harrison*, 2003 WL 21715882 at *1-2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural

default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied these claims based upon Petitioner's failure to object or seek a continuance at the start of trial testimony.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

In this case, Petitioner neither alleges nor establishes cause to excuse his default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner cannot establish prejudice to excuse his default as this claim lacks merit for the reasons stated *infra*.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of

9

actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, otherwise lacks merit, and must be dismissed.

2. Merits

Petitioner asserts that he was denied his constitutional rights to be present, assist in his own defense, and confront the witnesses against him because he did not have his eyeglasses during his trial. A criminal defendant has the right to be present at every stage of the trial from the impaneling of the jury to the delivery of the sentence. *See United States v. Burke*, 345 F.3d 416, 422 (6th Cir. 2003). When the defendant is not confronting witnesses or evidence against him, this right is not absolute, but exists "'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). Additionally, the right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967). Further, the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront and cross-examine the witnesses against him. *See, e.g., Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973).

In reviewing this claim for plain error, the Michigan Court of Appeals concluded that Petitioner had failed to provide authority to show a due process right to see clearly at trial and

that he had failed to show how the lack of eyeglasses prevented him from hearing and understanding the testimony and challenging the prosecution's witnesses. *Harrison*, 2003 WL 21715882 at *2.

This Court agrees and finds that the state court's decision is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof. Although the Court has no reason to doubt Petitioner's claim that he was unable to see clearly during trial, the Court nonetheless finds that he has failed to show that this circumstance prevented him from hearing and understanding the proceedings, assisting in his defense, or confronting the witnesses against him. The facts of the case were relatively straightforward and Petitioner knew most of the witnesses who testified against him at trial, especially those witnesses who provided the most inculpatory testimony. Petitioner was able to face those witnesses, hear their testimony, and assist defense counsel in attacking their credibility, despite his inability to see clearly. Moreover, Petitioner was present at all critical stages of his criminal proceedings, was represented by counsel throughout those proceedings, and testified in his own defense. While a criminal defendant's lack of eyeglasses at trial is not an ideal circumstance, the Court cannot say that such a situation necessarily constitutes a violation of due process. This is particularly so in the instant case, where Petitioner has not shown that his ability to comprehend the proceedings and defend himself was impaired. Petitioner has thus failed to establish that his federal constitutional rights were violated by his lack of eyeglasses at trial. Habeas relief is not warranted on this claim.

      B.     <u>Ineffective Assistance of Counsel Claims</u>

Petitioner also asserts that he is entitled to habeas relief because there was a breakdown

11

in his relationship with defense counsel, the trial court refused to appoint substitute counsel, and defense counsel was ineffective in representing him at trial. Respondent contends that these claims lack merit.

### 1. Substitute Counsel

Petitioner first alleges that the trial court erred in failing to appoint substitute counsel due to a breakdown in the attorney-client relationship prior to trial. It is well-established that "[t]he right to counsel of choice, unlike the right to counsel . . . is not absolute. An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Good cause includes "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [an] attorney." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985).

When reviewing whether a court abused its discretion in denying a defendant's motion to substitute counsel, a court generally considers, "the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense. . . . Further, consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Iles*, 906 F.2d at 1131, n.8 (internal quotations omitted).

In this case, the Michigan Court of Appeals concluded that the trial court did not abuse its discretion in denying the request for substitute counsel because although the parties expressed some disagreement over issues, counsel assured the court that he was experienced

and would represent Petitioner to the best of his ability. *See Harrison*, 2003 WL 21715882 at *3.

This Court agrees that the trial court did not abuse its discretion or violate Petitioner's constitutional rights in denying his request for substitute counsel. Petitioner first expressed dissatisfaction with defense counsel at the final conference before trial. His complaints about counsel's performance and advice were not credited nor viewed as substantial by the trial court and do not establish good cause for substitution. While the parties has some disagreements about how to proceed, defense counsel expressed his willing to communicate with Petitioner and defend him. Neither counsel nor Petitioner indicated that their differences would prevent counsel from presenting a defense. In fact, trial counsel indicated that he was prepared to proceed with the case. Petitioner has not shown that a legitimate breakdown in the attorney-client relationship occurred. Accordingly, this Court finds that the Michigan Court of Appeals' decision in this regard is neither contrary to nor an unreasonable application of established United States Supreme Court precedent. Habeas relief is therefore not warranted on this claim.

         2.         <u>Effectiveness of Counsel</u>

Petitioner relatedly asserts that defense counsel was ineffective in representing him. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so

serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Citing the *Strickland* standard, the Michigan Court of Appeals concluded that Petitioner had failed to establish that he was denied the effective assistance of counsel. *Harrison*, 2003 WL 21715882 at *2-3.

Having considered this issue, the Court finds that the Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application of federal law or the facts. The record reveals that counsel was well-prepared for trial, effectively cross-examined witnesses, and made relevant and timely objections. Petitioner has not shown that trial counsel

acted outside the range of reasonable conduct. Petitioner has not established that defense counsel failed to take reasonable steps to prepare for trial, interview witnesses, investigate potential defenses, or challenge the prosecution's case. Petitioner fails to allege with any specificity what motions, witnesses, defenses, or exculpatory evidence counsel should have investigated or produced at trial. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings). Although Petitioner and defense counsel disagreed about how to proceed with some matters, this disagreement did not render counsel ineffective. To the contrary, the record indicates that counsel took reasonable steps to refute the prosecution's case by cross-examining witnesses, challenging the evidence, and presenting Petitioner's defense such that his performance was not deficient under *Strickland, supra*. The fact that trial counsel's strategy was ultimately unsuccessful does not mean counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

    Moreover, given the evidence presented at trial, particularly the testimony of Aisha Jackson and Lorenzo Reese, and the fact that Petitioner offers no new additional evidence in support of his defense, Petitioner cannot establish that he was prejudiced by trial counsel's conduct. He has thus failed to satisfy either prong of the *Strickland* test for ineffective

assistance of counsel. Habeas relief is not warranted on this claim.

**V.      Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

For the reasons stated *supra*, this Court concludes that Petitioner has failed to make a

substantial showing of the denial of a constitutional right as to his habeas claims. Additionally, reasonable jurists would not find this Court's procedural ruling debatable. No certificate of appealability is warranted in this case nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed on appeal *in forma pauperis* is **DENIED**.


s/John Corbett O'Meara
John Corbett O'Meara
United States District Judge

Dated: August 12, 2005